UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

MAURICE MOORE,

      Defendant.

_____/

Case No. 12-20104

Honorable Nancy G. Edmunds

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [15]**

Defendant is charged in a one-count Indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  The charges arise out of a 911 call from a residence on Webb Street in Detroit in the early morning hours of January 19, 2012.  At a hearing held on May 22, 2012, this matter came before the Court on Defendant's motion to suppress a handgun with a 17 round magazine that was discovered by police officers during their subsequent stop and frisk of Defendant.  Defendant's motion is DENIED because the officers conducted a proper *Terry*[1] stop supported by a reasonable, articulable suspicion of criminal activity.

**I.    Facts**

At about 1:10 a.m. on January 19, 2012, a 911 call came in from an individual at a residence on Webb Street in Detroit, Michigan, reporting that Defendant had been drinking and waiving a gun around inside that residence.  Detroit Police Officers Rahaman

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

Muhammad and Khari Muhammad received a radio dispatch to the Webb address. Officer Roberto Berry and Sergeant J. Coles also reported. They spoke with the 911 caller who identified himself and provided the officers with an eye-witness account of the events that generated the 911 call.

The 911 caller and eye-witness told the officers that Defendant had been drinking and waving a gun around while inside the Webb Street residence. The 911 caller also told the police that Defendant had, on a previous occasion, fired a gun into the ceiling of that residence, and the caller feared for his safety if Defendant returned. He then provided the police with a detailed description of Defendant and what he was wearing. He described Defendant as a black male, 6-foot tall, and weighing 250 pounds. He described Defendant's clothing – black jeans, work boots, and a black jacket with multi-colored 6s printed on it. He then told the officers that Defendant had just left the Webb Street residence and was walking to a gas station on Twelfth Street. (Gov't Resp., Ex. A-D, Det. Police Dep't Arrest Repts.)

The police began searching the immediate area by car. Officer Roberto Berry and Sergeant J. Coles observed an individual who matched the 911 caller's detailed description about one block away. Defendant was walking back from the store after having purchased some cigarettes. (Def.'s Mot. at 3.) Officer Berry and Sgt. Coles called for an additional unit, and Officers Rahaman Muhammad and Kari Muhammad responded. Officer Roberto Berry and Sergeant J. Coles approached Defendant and gave him verbal commands to show his hands. Defendant was then asked to place his hands behind his back, was advised that he was being investigated, and was handcuffed by Officer Kari Muhammad. Officer Kari Muhammad performed a pat down for offensive weapons and observed and

2

felt a bulge in Defendant's left side chest area.  When Defendant's jacket was unzipped, Officer Rahaman Muhammad observed the handle of a handgun in Defendant's left jacket pocket.  He recovered the gun which was identified as a black Taurus handgun with a 17-round magazine.  It had six live rounds and one round chambered.  Defendant Moore was informed of his *Miranda* rights and transported to the Detroit Police's Twelfth precinct station for processing.  He stated that he knew his rights and answered questions but refused to sign a constitutional rights or interrogation form.  (Gov't Resp., Ex. A-D, Det. Police Dep't Arrest Repts.)

## II.   Analysis

Defendant argues in his motion that his Fourth Amendment rights were violated because the police lacked probable cause to seize and search him and thus the gun they discovered during that search and seizure should be suppressed.  The government responds that, under the totality of the circumstances, the police had a reasonable, articulable suspicion that Defendant had been or was about to engage in criminal activity and thus conducted a valid *Terry* investigative stop and protective pat-down that resulted in their discovery of the handgun and Defendant's subsequent arrest.  The government's arguments are persuasive, and Defendant's motion is denied.

### A.  General Principles

The courts look to the moment a defendant is first seized when evaluating whether that seizure violated his Fourth Amendment rights.  *Robinson v. Howes*, 663 F.3d 819, 827 (6th Cir. 2012).   "'Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.'"  *Id.* at 828 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).  Here, Defendant

was seized when he was handcuffed. *See Kowolonek v. Moore*, No. 10-5398, 2012 WL 573996, *3 (6th Cir. Feb. 23, 2012) (concluding that an "investigatory *Terry* stop began when [a police officer] handcuffed one of [the plaintiff]'s wrists").  The court thus looks at the point in time immediately before Defendant was seized and asks whether "the officer has reasonable, articulable suspicion that [a] person *has been*, is, or is about to be engaging in criminal activity."  *United States v. Smith*, 594 F.3d 530, 536 (6th Cir. 2010) (internal quotation marks and citations omitted).   "In evaluating an investigatory *Terry* stop," the court asks whether, under a totality of the circumstances, "there was a proper basis for the stop," and if yes, "whether the degree of intrusion . . . was reasonably related in scope to the situation at hand."  *Id.* (internal quotation marks and citations omitted).  *See also Kowolonek*, 2012 WL 573996 at *3.

## B.  There Was a Proper Basis for the *Terry* Stop

"Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause."  *Alabama v. White*, 496 U.S. 325, 330 (1990).  As the Sixth Circuit observed in *Smith*, "the officer must be able to articulate some minimal level of objective justification for making the stop."  *Smith*, 594 F.3d at 536 (internal quotation marks and citation omitted).

Relying on the Supreme Court's decision in *Florida v. J.L.*, 529 U.S. 266 (2000), Defendant argues that, because the officers' sole basis for their stop and seizure is an inherently unreliable anonymous 911 call, his Fourth Amendment rights were violated.  This

4

Court disagrees.

In *Florida v. J.L.*, the Supreme Court observed that "[w]here an informant tip, rather than police observation, is the basis of an investigatory stop, the tip must exhibit 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" *Robinson*, 663 F.3d at 828 (quoting *Florida v. J.L.*, 529 U.S. at 270). Moreover, when that informant tip is anonymous and thus cannot be verified, "the Supreme Court recognizes the probative value of corroboration of details of an informant's tip by independent police work." *Id.* (internal quotation marks and citation omitted). Defendant's reliance on *Florida v. J.L.* is misplaced. "In *Florida v. J.L.*, . . . a tip from an unknown caller from an unknown location, stating merely that J.L. was standing at a particular bus stop, dressed in plaid, and armed with a gun," was held to contain insufficient "indicia of reliability to establish reasonable suspicion for a stop." *Id.* at 829. "An accurate description of the suspect's location and appearance" was held to be insufficient "because such a tip 'does not show that the tipster has knowledge of concealed criminal activity.'" *Id.* (quoting *Florida v. J.L.*, 529 U.S. at 272.)

Here, unlike *Florida v. J.L.*, the 911 caller was subsequently identified and personally interviewed within minutes of the call at the address where the 911 call originated and gave an eye-witness account of Defendant's alleged criminal activity – waving a gun around in that home in a manner that the 911 caller found threatening in light of Defendant's past conduct of firing a gun in that home and the fact that he had been drinking the day of the 911 call. The Sixth Circuit has distinguished between "anonymous tips provided over the telephone and those given face-to-face with a police officer" because the latter "gives the police an opportunity to observe the informant's demeanor and credibility" and because

5

"[t]he in-person informant risks being held accountable for false information." *Henness v. Bagley*, 644 F.3d 308, 318 (6th Cir. 2011), *cert. denied* ___ U.S. ___, ___ S. Ct. ___, 2012 WL 359583 (U.S. Apr. 23, 2012). The *Henness* court also found that "an in-person informant's proximity in time and space to the reported criminal activity indicates the reliability of the tip, because it reflects that the informant acquired the information firsthand." *Id.* at 318. The same is true here. In an in-person interview with the police right after the 911 call, the caller provided firsthand information about Defendant's alleged criminal activity that day and similar criminal activity at the same home on a previous occasion. The police had all this information, along with information predicting where Defendant could be located – walking to or returning from a local gas station to the 911 caller's home -- and a detailed description of his physical appearance and clothing. Similar to the police in *Henness*, the police here observed Defendant, fitting the physical description provided by the 911 caller, in the general vicinity predicted by the 911 caller. Thus, just as in *Henness*, based on all of the information discussed above, the police "had authority under *Terry* to stop [Defendant] with reasonable suspicion that a crime had been committed, and to pat down [Defendant] with reasonable suspicion that he was armed." *Id.* at 319.

The Court now considers "whether the degree of intrusion . . . was reasonably related in scope to the situation at hand." *Kowolonek*, 2012 WL 573996 at *3 (quoting *Smith*, 594 F.3d at 536).

### C. *Terry* Investigative Stop Did Not Ripen Into Arrest

Defendant argues his seizure ripened into an arrest the moment he was handcuffed and thus required probable cause. (Def.'s Mot. at 6.) This Court disagrees. The Sixth Circuit considered a similar argument in *Houston v. Clark County Sheriff Deputy John Does*

6

*1-5*, 174 F.3d 809, 814 (6th Cir. 1999).  In *Houston*, the court observed that "the use of handcuffs [does not] exceed the bounds of a *Terry* stop, so long as the circumstances warrant that precaution."  *Id.* at 815 (citing cases).  It concluded that, because the defendant officers reasonably believed that the individuals stopped had been involved in a shooting, "their use of handcuffs and their detention of the men in the [police] cruisers were both reasonably necessary to protect the officers' safety during the investigation . . . [and] were therefore 'reasonably related' to the investigation that warranted the initial stop."  *Id.*  The same is true here.  Based upon the facts provided to them from the in-person interview with the 911 caller, the officers that initially stopped Defendant had a reasonable belief that he was intoxicated, armed, and dangerous.  Thus, their use of handcuffs before conducting a pat-down for weapons was reasonably necessary to protect their safety during the investigation that warranted the initial stop.

Considering the totality of the circumstances, this Court concludes that the police had a reasonable, articulable suspicion justifying their *Terry* stop and pat-down for weapons.[2]

### III.   Conclusion

For the above-stated reasons, Defendant's motion to suppress is DENIED.


　　　　　　　　　s/Nancy G. Edmunds
　　　　　　　　　Nancy G. Edmunds
　　　　　　　　　United States District Judge

---

[2]In light of this ruling, it is unnecessary to consider the government's additional argument that, even if the *Terry* stop were somehow defective, Defendant's motion to suppress should be denied because the officers did not engage in "deliberate, reckless, or grossly negligent conduct" that must be deterred.  *United States v. Master*, 614 F.3d 236, 242 (6th Cir. 2010).

7

Dated:  May 22, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record
on May 22, 2012, by electronic and/or ordinary mail.

            s/Carol A. Hemeyer
            Case Manager